235 A.2d 866.

WARREN EDUCATION ASSOCIATION *vs.* RICHARD L. LAPAN *et al.*, WARREN SCHOOL COMMITTEE.

NOVEMBER 30, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

164

KELLEHER, J. This civil action in the nature of mandamus was instituted against the defendants in their capacities as members of the school committee of the town of Warren to require the committee to execute a collective bargaining agreement which would embrace salaries, working conditions and other incidents of employment for the 1967-1968 school year. The plaintiff is the duly-recognized collective bargaining agent for the certified public school teachers who are employed by the town. The case is before us on the plaintiff's appeal from an order of the superior court which granted the defendants' motion to dismiss the instant complaint for failure to state a claim upon which relief could be granted under 12(b)(6) of the new rules of civil procedure of the superior court. We shall sometimes hereafter refer to the plaintiff as the association and to the defendants as the committee.

The instant complaint is based upon the following undisputed facts. On or about December 22, 1966, the association gave written notice requesting a meeting for the purpose of negotiating a contract for the school year which would begin in September 1967. Pursuant to this request several meetings were held in January and February 1967 between the committee and representatives of the association. An agreement was reached on the contents of a contract for the next school year. The committee advised the association that it wished to defer the formal execution of any agreement until after the annual financial town meeting had been held in the month of May. In the meantime, the association on March 14, 1967, gave its unanimous approval of the agreement which had been reached between

its agents and the committee. Subsequent to the financial town meeting, the association made a written request to the committee that it meet with its representatives and formally execute the agreement reached earlier. On May 29, 1967, the acting chairman of the committee notified the association of the committee's refusal to execute the contract. The association thereupon instituted this litigation for mandamus to compel the committee to execute in writing the terms upon which they had orally agreed.

The association bases its complaint upon the provisions of G. L. 1956, §28-9.3-4, which is part of the school teachers arbitration act. This section reads as follows:

> "28-9.3-4. Obligation to bargain.—It shall be the obligation of the school committee to meet and confer in good faith with the representative or representatives of the negotiating or bargaining agent within ten (10) days after receipt of written notice from said agent of the request for a meeting for negotiating or collective bargaining purposes. This obligation shall include the duty to cause any agreement resulting from negotiations or bargaining to be reduced to a written contract, provided that no such contract shall exceed the term of three (3) years. Failure to negotiate or bargain in good faith may be complained of by either the negotiating or bargaining agent or the school committee to the state labor relations board which shall deal with such complaint in the manner provided in chapter 7 of this title."

The association acknowledges that although an action for a writ of mandamus is now controlled procedurally in the superior court by its rules of civil procedure, the legal sufficiency of a complaint in such an action is still to be tested by the same principles which have heretofore governed the issuance of this prerogative writ. *Demers* v. *Shehab*, 101 R. I. 417, 224 A.2d 380. Accordingly, a plaintiff in such an action must show that he has a clear right to have done the act he seeks and that the defendant has a clear, legal and ministerial duty to perform without any discre-

tion to refuse. *Castle Realty Co.* v. *Soloveitzik,* 101 R. I. 391, 224 A.2d 44. It also must be demonstrated that the law has provided no other adequate remedy. In those situations where it can be shown that there is an adequate administrative remedy available to a plaintiff, it is settled law that he must exhaust such a remedy before judicial relief can be invoked by way of mandamus. *Conley* v. *Mc-Carthy,* 84 R. I. 141, 121 A.2d 875.

Before examining the issue of whether mandamus will lie in this particular action, we feel a comment should be directed to the procedural aspects of the hearing held on the committee's motion.

Under rule 12(b) of the superior court's rules of civil procedure, parties on either side of a law suit may submit to the court for its consideration matters outside the pleadings in support of or in opposition to a motion to dismiss for failure to state a claim meriting relief. The provisions of rule 12(b) expressly authorize the trial justice either to include or exclude such extra pleading matters in his deliberation on a motion to dismiss; however, if the trial justice freely elects to consider the supplemental information, rule 12(b) provides that a motion is converted into one for summary judgment and should be disposed of according to the pertinent provisions of rule 56. *Ewing* v. *Frank,* 103 R. I. 96, 234 A.2d 840.

When a motion is converted under rule 12(b) into one for summary judgment, there is a significant and noteworthy change in the issue presented to the court. No longer is the inquiry of the court focused on a determination of the sufficiency of the complaint to set forth a valid claim for relief, as would be the situation under rule 12(b), but instead a decision must be made, after a review of the entire record, on whether there exists a factual issue contested by the parties, and, in the absence of which, whether as a matter of law one party is entitled to a judgment.

On a hearing on a motion under either rule 12(b) or rule 56, it is not the office of the trial justice to determine any issues of fact. In such cases, all favorable inferences which can be drawn from matters properly before the court accrue to the benefit of the party against whom the motion is made. Thus the pleadings under rule 12(b) and the entire record under rule 56 are scrutinized closely by the court in determining whether the movant has met his burden successfully; and correspondingly all pleadings and evidentiary documents filed by the non-moving party are viewed indulgently by the court. 6 Moore, Federal Practice (2d ed.), ¶56.15, p. 2281. The record in the instant appeal discloses that the above procedure was not adhered to by the trial justice.

At the hearing of defendants' 12(b) motion, the transcript indicates that the trial justice was shown a letter and that its contents apparently influenced him in dismissing plaintiff's complaint.[1] In taking this action the trial justice stated that in his opinion mandamus would not lie under the facts of this case. Although extrinsic matter was accepted by the court at the hearing, the trial justice purported to dismiss the claim under 12(b)(6).[2] Such action is procedural error. *Gager* v. *"Bob Seidel,"* 300 F.2d 727.

It is elementary that if a trial justice wishes to limit the scope of the hearing on a motion to dismiss under 12(b)(6),

[1] The trial justice is reported in the transcript as having stated that the contents of a letter sent to the association by the school committee induced him to dismiss the complaint on the basis that the association sought to compel an act which was not ministerial in nature but instead was one which involved discretion; hence, he concluded that mandamus was an improper vehicle for relief under such a set of circumstances.

[2] The fact that the trial justice regarded his decision to be one under rule 12(b)(6) and not rule 56 is made obvious by his permitting the association leave to file an amended complaint. If he had intended to enter judgment under rule 56, it would be inconsistent to allow the filing of an amended pleading.

he has no right to consider facts except those recited in the pleadings; and he has no right to admit evidence not incorporated in the formal pleadings. In short, he must confine his examination to the well-pleaded facts in applying the substantive law to the allegations pleaded to determine if the complaint properly describes the set of circumstances upon which a court could justifiably grant relief. Resort to anything beyond the pleadings is without sanction or authority and is error. *Grand Opera Co.* v. *Twentieth Century-Fox Film Corp.*, 235 F.2d 303.

Even if we were to treat defendants' motion as properly transformable into one for summary judgment under rule 56, our action would have questionable validity since there is respectable authority to the effect that letters alone are not within the contemplated class of documents permissible to be filed under rule 56. *Marks Music Corp.* v. *Stasny Music Corp.*, 1 F.R.D. 720; 3 Barron & Holtzoff, §1237, p. 164. It also seems to be clear that written documents submitted to and not excluded by a court on motions under rule 56 must be attached to the record and exhibited in full. *Taylor* v. *Royal Ins. Co.*, 34 F.R.D. 132; 3 Barron & Holtzoff, *supra.* This allows us the benefit of examining them in the event the ruling of the trial justice on the motion is appealed. In the state of the instant record we can only surmise the contents of the committee's letter.

The test of what a complaint must contain in order to withstand a motion to dismiss under 12(b)(6) has been clearly spelled out by this court in *Bragg* v. *Warwick Shoppers World, Inc.*, 102 R. I. 8, 227 A.2d 582, and more recently in *Buszta* v. *Souther*, 102 R. I. 609, 232 A.2d 396. In both cases we said that in order to justify a dismissal of a complaint under this rule the trial justice, after according the plaintiff the benefit of every inference in viewing the allegations of his complaint in their most promising light, should be satisfied that it is clear beyond a reasonable doubt

that the plaintiff could not conceivably prove facts which would qualify him for judicial relief. While the superior court's dismissal of the association's complaint was wrong because the trial justice failed to comply with the proper standards set forth in the new rules of procedure when he considered the committee's motion, we believe that there are other grounds upon which we can and will affirm the ruling of the trial justice. *Lancia* v. *Grossman's of R. I., Inc.,* 100 R. I. 407, 216 A.2d 517; *Budwee* v. *New England Motors,* 99 R. I. 663, 210 A.2d 131.

The association argues that the decision of the trial justice should be overturned for two reasons. First, they contend that the legislature's use of the word "may" in the last sentence of §28-9.3-4 connotes the idea of permissive recourse to the state labor relations board in disputes arising under the act; therefore, they are not compelled as a condition precedent to seeking relief from the courts to present a complaint to the state labor relations board. Secondly, they assert, even if the statute is construed to mean that a complaint must be filed with the state labor relations board prior to litigation, the remedy afforded by petitioning the board is inadequate in several respects, especially since the board is powerless under our statutory law to compel the committee to execute a written contract encompassing all the terms upon which the parties had orally agreed.

As a preface to our discussion of the statute and the legislative intent behind its enactment, we deem it appropriate to dwell briefly on the history of the teacher-school committee labor relations in the years preceding the enactment of the teachers arbitration act. All we relate are matters of common knowledge.

In years past, work stoppages, or the threats thereof, have plagued several school systems in the state. This court ruled in the 1958 case of *City of Pawtucket* v. *Pawtucket Teachers' Alliance,* 87 R. I. 364, 141 A.2d 624, that a public

school teacher has no lawful right to strike. Last year we reaffirmed that rule in *School Committee* v. *Pawtucket Teachers Alliance,* 101 R. I. 243, 221 A.2d 806.

The legislature in 1965, keenly aware of the strife and disruption caused by such discordant incidents between school committees and teachers and anxious to provide some remedy in this area of great public interest passed Resolution No. 45 which created a special commission to study and recommend ameliorative legislation in this area of governmental concern. The resolution which delineated the authority of the commission contained a directive from the legislature that the commission formulate a suggested procedure designed to be available in the event of a bargaining controversy between a school committee and teachers. Section 28-9.3-4 of the teachers arbitration act is the direct result of the commission's deliberations and legislative proposals. It is this section we are asked to construe.

The prime issues to be decided on this appeal may be defined as follows: first, whether or not, before seeking judicial aid, the teachers must under the statute initially request the state labor relations board to intervene; second, whether §28-9.3-4 provides the teachers with a plain, timely and effective administrative remedy.

## I
### "May": Permissive or Mandatory?

As regards the first issue, we believe it was the intent of the legislature to require a complaining party to submit their grievances to the state labor relations board before any judicial remedy could be invoked. Thus, when a breakdown in communication occurs in negotiations between teachers and school committees, the legislature intended, in our opinion, to vest initial jurisdiction of the controversy in the board.

The association argues the use of the word "may" in the section under examination is demonstrative evidence that

the legislature intended to permit a party to elect between filing a complaint with either the courts or the labor relations board. We acknowledge the cardinal rule of construction advanced by the association that in construing statutes a court will attribute to words their common, ordinary and natural meaning. *Mount Pleasant Cab Co. v. Rhode Island Unemployment Compensation Board*, 73 R. I. 7, 53 A.2d 485. Nevertheless, we are also cognizant of another rule of equal dignity in the canons of construction which provides that a court should construe words of a statute according to their plain meaning unless such interpretation would defeat the discovered intendment of the legislature. *Irish v. Collins*, 82 R. I. 348, 107 A.2d 455; *State v. Nadeau*, 81 R. I. 505, 105 A.2d 194. Moreover, a court should not allow itself to be enslaved to the literal meaning of words and on occasion, albeit with due caution, must eschew the literal and ordinary meaning of words in order to better fulfill the evident purpose of the legislation sought to be construed. *O'Brien v. Waterman*, 91 R. I. 374, 163 A.2d 31; 82 C.J.S., Statutes, §329, p. 651. The present appeal, we feel, is to be included within the rule of the *Irish* and *O'Brien* cases.

We readily concur in the association's observation that the verb "may" is connotative of permissiveness, but we recognize occasions when this court has attributed to it a different meaning in order to fulfill better the ascertained intent of the legislature. Such was the situation in *Carlson v. McLyman*, 77 R. I. 177, 182, 74 A.2d 853, 855, where this court said:

> "* * * We concede that the ordinary meaning of the word 'may' is permissive and not compulsive; yet whether it should be given the latter meaning and construed as 'shall' in a given case depends on the intent of the legislature as ascertained from the language, the nature, and the object of the statute."

See also *Nolan v. Representative Council*, 73 R. I. 498, 57

A.2d 730. As in the *Carlson* and *Nolan* cases, we feel the present case is one requiring a purposeful interpretation of the word "may."

Our efforts to ascertain the intent which prompted the legislature to enact the teachers arbitration bill were greatly aided by the published report of the findings and suggestions of the special study commission which we referred to earlier. We have taken judicial notice of this manuscript. 29 Am. Jur.2d, Evidence, §28, p. 65. In our opinion the report, which sheds considerable light on the section under examination, strongly reenforces and corroborates our treatment of the verb "may" as a mandatory and not as a permissive directive of the legislature. In that portion of the report devoted to listing recommendations, we find the following comment of the commission appearing on page 7:

> "Once an organization representing the teachers has been certified, the school board should be compelled to bargain or negotiate in good faith with such organization. Failure to bargain or negotiate in good faith could be the subject matter of a complaint against either the teachers' organization or the school board and such complaint should be handled in the same fashion as unfair labor practices are presently handled under the State Labor Relations Act."

The above passage seems to us to represent cogent evidence that the legislature intended that if either a school committee or a teachers association fails to negotiate in good faith, the aggrieved group must commence proceedings before the state labor relations board prior to turning to the courts for assistance.

## II
### Adequacy of the Remedy

The second issue formulated in this case is whether the teachers arbitration act provides a plain and adequate remedy. If we find that the act does offer such a remedy, then it is clear under our law that the association must explore and exhaust that remedy prior to seeking judicial recourse.

*Conley* v. *McCarthy*, 84 R. I. 141, 121 A.2d 875.[3] We have in the past stated that an available remedy which would bar the issuance of a writ of mandamus must be one which is plain, speedy and adequate. *Putnam Foundry & Machine Co.* v. *Town Council*, 28 R. I. 422, 67 A. 733. The question of what constitutes a plain, adequate and speedy remedy is not susceptible to application as a general rule but instead must be considered in the circumstances of each case. 55 C.J.S., Mandamus, §17.

There has been no persuasive showing by the association in this case of any facts which would induce us to find exception to the applicability of the general rule as it was announced in the case of *Conley, supra*. In our opinion the association has in chap. 9.3 of title 28 a plain and adequate relief for their alleged grievances.

It is clear to us from our examination of the statute and from a review of the facts before us, that contrary to the association's assertions, the state labor relations board may compel the committee to sign a written contract formalizing any prior oral agreement reached by the parties at the bargaining table. Section 28-9.3-4 specifically provides that the obligation to meet and confer in good faith includes the duty to reduce any earlier oral agreement to a written contract. Once either party complains to the state labor relations board under this section, the board shall treat the complaint in the same manner as if it were a charge of an unfair labor practice brought pursuant to §28-7-13. We further note that §28-7-26, provides the board with authority to petition the superior court for a decree enforcing their orders. It is to be observed also that §§28-7-25 and 28-7-32

---

[3]See also *Izzi* v. *Warwick School Committee*, 82 R. I. 76, 105 A.2d 818; *New England Tel. & Tel.* v. *Kennelly*, 75 R. I. 422, 67 A.2d 705; 55 C.J.S., Mandamus, §17. In the *Izzi* case, this court under a substantially analogous set of circumstances, refused to grant a writ of mandamus to a teacher because a plain and adequate remedy had been made available by the legislature.

provide that all proceedings either before the board or before the court shall be disposed of in an expeditious fashion. The latter section expressly states that any petition filed pursuant to chap. 7 of title 28 shall take precedence over all other matters on the calendar except those of similar character.

In view of the foregoing, therefore, we are of the opinion that the association has in the teachers arbitration act a very adequate and effective course of relief in this case. The legislature has created therein a remedy for their grievances which significantly enhances their power to bargain with school committees. By petitioning the labor relations board, whose expertise in this sensitive area is unquestioned, the association may well find such assistance so efficacious in solving their negotiation problems that the necessity of any judicial intervention will be averted. If its efforts are unsuccessful in bringing about proper relief, seasonable judicial aid can be swiftly brought to bear on a recalcitrant party through the preferred status which is given to suits filed at the behest of the state labor relations board. To allow the association to bring this action without first pursuing the administrative remedy which the legislature intended they so employ, would be tantamount to redrafting the legislation under study. This, of course, we refuse to do. Our duty is to construe—not to redraft statutes. *Moretti* v. *Div. of Intoxicating Beverages,* 62 R. I. 281, 5 A.2d 288.

The order appealed from is sustained, and the case is remitted to the superior court for further proceedings.

*Bernard F. McSally,* for plaintiff.

*Edwards & Angell, James K. Edwards,* for defendants.